Gerardo Bibiano FALCON CARRICHE; Theresa V. De Falcon Carriche; and Christina Pamela Falcon Bibiano, Petitioners,

v.

John ASHCROFT, Attorney General, Respondent.

No. 02–71143.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 2003.

Filed July 14, 2003.

---

Susan E. Hill, Law Offices of Susan E. Hill, Los Angeles, CA, for the petitioners.

Robert D. McCallum, Jr., Julia K. Doig, and Audrey B. Hemesath, United States Department of Justice, Washington, DC, for the respondent.

Mary K. Kenney, Nadine K. Wettstein, and Beth Werlin, American Immigration Law Foundation, Washington, DC, for amicus curiae American Immigration Law Foundation.

Before T.G. NELSON, SILVERMAN, and McKEOWN, Circuit Judges.

Opinion by Judge McKEOWN; Partial concurrence and partial dissent by Judge T.G. NELSON.

## OPINION

McKEOWN, Circuit Judge.

In this case of first impression in the Ninth Circuit, we are presented with constitutional and regulatory challenges to the Board of Immigration Appeals' ("BIA") recently-adopted streamlining procedures. Under those procedures, a single member of the BIA may affirm the decision of the Immigration Judge ("IJ"), thus bypassing the traditional three-judge review. In such a case, the Board affirms without opinion and the IJ's opinion becomes the final agency action.

The streamlining process was invoked in the case of Gerardo Bibiano Falcon Carriche and Theresa Vianna De Falcon Carriche ("the Carriches"), who now appeal the Immigration and Naturalization Service's ("INS")[1] denial of their request for cancellation of removal. The Carriches argue that they met the statutory requirements for cancellation of removal, including the requirement that a qualifying United States citizen or lawfully admitted alien relative would suffer "exceptional and extremely unusual hardship" if the Carriches were removed. 8 U.S.C. § 1229b(b)(1)(A)-(D)(2002). Specifically, they believe that their youngest daughter, a United States citizen, would suffer exceptional and extremely unusual hardship if the family were removed because she would have difficulty adapting to the Mexican educational system and, due to economic conditions in Mexico, the family would be hard-pressed to provide for her basic care. The IJ rejected this argument, concluding that the economic detriment and educational difficulties the

---

1. Pursuant to the Department of Homeland Security Reorganization Plan, as of March 1, 2003, the INS was abolished and its functions were transferred to the Department of Homeland Security. *See* 6 U.S.C. § 542. Because the agency was known as the INS while the IJ and BIA considered the Carriches' case, we refer to it as the INS here.

daughter would face after removal were neither exceptional nor unusual. The BIA affirmed the IJ's decision pursuant to 8 C.F.R. § 3.1(a)(7) (amended by 67 Fed. Reg. 54,878 (Aug. 26, 2002)),[2] its streamlining procedures.

██ The Carriches argue that the BIA's streamlining procedures violated their Fifth Amendment right to due process and that, even if streamlining is constitutional, the discretionary nature of the hardship inquiry precludes streamlining in cancellation of removal cases. We join our sister circuits in holding that streamlining does not violate an alien's due process rights. *See Albathani v. INS,* 318 F.3d 365, 376–79 (1st Cir.2003); *Soadjede v. Ashcroft,* 324 F.3d 830, 832–33 (5th Cir.2003); *Georgis v. Ashcroft,* 328 F.3d 962, 967 (7th Cir.2003); *Mendoza v. U.S. Attorney General,* 327 F.3d 1283, 1289–90 (11th Cir. 2003). We also conclude that we lack jurisdiction to review the specific decision to streamline the Carriches' case because their claim is based on an alleged error in a discretionary hardship determination that we lack jurisdiction to review in the first instance. *See Romero–Torres v. Ashcroft,* 327 F.3d 887, 892 (9th Cir.2003).

## I. THE STREAMLINING REGULATIONS

A dramatic increase in caseload prompted the INS to establish the streamlining procedures in 1999. In considering changes to its adjudication process, the INS documented the exploding caseload—from fewer than 3,000 new appeals in 1984 to in excess of 28,000 appeals in 1998. *See* Executive Office for Immigration Review; Board of Immigration Appeals: Streamlining, 64 Fed.Reg. 56,135, 56,136 (Oct. 18, 1999) (to be codified at 8 C.F.R. pt. 3) ("Streamlining Final Rule"). That number now exceeds 34,000. *See* Executive Office for Immigration Review, Statistical Year Book: 2002, at 49 fig. 23, *available at* http://www.usdoj.gov/eoir/statspub/fy02 syb.pdf. This increase, coupled with "[f]requent and significant changes in the complex immigration laws," resulted in a heightened "need for the Board's authoritative guidance in the immigration area...." Streamlining Final Rule, 64 Fed.Reg. 56,136. In an effort to meet its "overriding objective of providing fairness in adjudicating appeals," the BIA decided to limit the use of three-judge appellate panels to cases with "a reasonable possibility of reversible error in the result below." *Id.*[3]

Although an IJ's decision is ordinarily reviewed by a three-member panel, the streamlining regulation authorizes a single BIA member to affirm the IJ's decision without opinion in specified circumstances: if "the [BIA] Member determines that the

---

2. The streamlining regulations were first adopted in 1999. The Department of Justice issued final amended regulations in August 2002, effective September 25, 2002. The amended regulations expand the summary affirmance procedure, limit the BIA's de novo review, and reduce BIA membership from 23 to 11 members. The Carriches' case was decided under the 1999 regulations.

3. The streamlining process is intended to "enable the [BIA] to render decisions in a more timely manner, while concentrating its resources primarily on cases where there is a reasonable possibility that the result below was incorrect, or where a new or significant issue is presented." 64 Fed.Reg. 56,136. The INS designed the rule to meet four goals: (1) to promote uniformity by providing better quality BIA decisions in the cases that three-member panels decide; (2) to improve timeliness and fairness of decisions; (3) to assure correct results; and, (4) to eliminate the BIA's backlog. *Id.* Although a stated goal of the new regulations is to eliminate the BIA's backlog, we observe that the practical result may be to shift the backlog directly to the courts of appeal. *See Albathani,* 318 F.3d at 377 n. 9.

result ... was correct; that any errors ... were harmless or nonmaterial; and that (A) the issue on appeal is squarely controlled by existing [BIA] or federal court precedent and does not involve the application of precedent to a novel fact situation; or (B) the factual and legal questions raised ... are so insubstantial that three-Member review is not warranted." 8 C.F.R. § 3.1(a)(7)(ii).

If an individual BIA member streamlines a case, the Board issues a form order containing the following language: "The Board affirms, without opinion, the result of the decision below. The decision below is, therefore, the final agency determination." 8 C.F.R. § 3.1(a)(7)(iii). Streamlining thus elevates the IJ's decision to the final agency action that is reviewed by the court of appeal, but it does not mean that the BIA has adopted, or entirely approves of, the IJ's determinations; it only means that the BIA deemed any errors by the IJ to be harmless. *Id.; see also Fajardo v. INS*, 300 F.3d 1018, 1019 n. 1 (9th Cir. 2002) ("The BIA summarily affirmed the IJ's order, which therefore constitutes the final agency decision under review.").

## II. DUE PROCESS CHALLENGE

■ The Carriches claim that the streamlining procedure is unconstitutional because it deprives aliens of due process as guaranteed by the Fifth Amendment. *See* U.S. Const. Amend. V. Notwithstanding any statutory limitations on judicial review, we retain jurisdiction to review this due process challenge to the INS's procedures. *See Ramirez–Alejandre v. Ashcroft*, 319 F.3d 365, 377 (9th Cir.2003).

Alien petitioners like the Carriches have understandable concerns about the streamlining process, particularly in light of the congressional limitations on federal court review.[4] *See Romero–Torres*, 327 F.3d at 892 (holding court lacks jurisdiction to review discretionary decisions regarding cancellation of removal). Their misgivings center around the lack of transparency in the process, the increasing frequency in which the process is invoked, the speed with which appeals are decided, and a belief that the BIA may be abdicating its statutorily-mandated role of appellate review. Although we are not unsympathetic to these concerns, we join the four other circuits that have considered the same constitutional challenge and conclude that streamlining does not violate an alien's due process rights. *See Albathani*, 318 F.3d at 379; *Soadjede*, 324 F.3d at 833; *Georgis*, 328 F.3d at 967; *Mendoza*, 327 F.3d at 1289.

The First Circuit's opinion in *Albathani* was the first to address this issue. Its careful reasoning is persuasive and, like the other courts of appeal that followed, we embrace its rationale. As the First Circuit held, any difficulty engendered by the court of appeals reviewing a "BIA decision without knowing its basis" does "not render the scheme a violation of due process or render judicial review impossible. Nor does the scheme violate any statute." *Albathani*, 318 F.3d at 377.

We note here that the Carriches received a full hearing before the IJ, a detailed and reasoned opinion from the IJ, the opportunity to present their arguments to the BIA, and a decision from a member of the BIA. Although they were afforded a hearing and a reasoned decision from the INS, the Carriches argue that they were entitled to an additional procedural safeguard—namely, review of their appeal before three members of the BIA. Their assertion that "it takes at least three board

4. We acknowledge the American Immigration Law Foundation's thoughtful and thorough amicus curiae brief, which details structural objections to the streamlining regulations.

members to identify, shape and determine important issues" in every appeal finds no support in the law. Nor is there any support for their assertion that a single board member will not conduct the required review of the IJ's decision.[5]

The Carriches received all of the administrative appeals to which they were entitled by statute, *see* 8 C.F.R. § 3.1(a)(7)(ii)(A), § 3.1(b), and the Constitution does not require that the BIA do more. *See Albathani*, 318 F.3d at 376 ("An alien has no constitutional right to any administrative appeal at all."). The streamlining regulation does not implicate or restrict any right of review in the court of appeals. Acknowledging that "administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties," *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 543, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978) (internal quotations omitted), we conclude that it does not violate the Due Process Clause for one member of the BIA to decide an alien's administrative appeal.

■ Nor is it a due process violation for the BIA to affirm the IJ's decision without issuing an opinion. The IJ's decision becomes the final agency action when a case is streamlined. *See* 8 C.F.R. § 3.1(a)(7)(iii). Thus, the streamlining procedures do not compromise our ability to review the INS's decision, to the extent we have jurisdiction to do so, because we can review the IJ's decision directly. *See Georgis*, 328 F.3d at 967 ("Since we review directly the decision of the IJ when a case comes to us from the BIA pursuant to

§ 1003.1(a)(7), our ability to conduct a full and fair appraisal of the petitioner's case is not compromised, and the petitioner's due process rights are not violated.")

The practical effect of this regulatory scheme is that, unless the BIA opts for three-judge review, the IJ's decision becomes the BIA's decision. In this way, the streamlining procedures are similar to the BIA's already-familiar practice of adopting the IJ's opinion without issuing a separate opinion where the IJ's reasoning is sufficient. *See Alaelua v. INS*, 45 F.3d 1379, 1382 (9th Cir.1995) (holding that the BIA may adopt the IJ's decision without issuing an independent, reasoned opinion because "[t]he adoption of a lower tribunal's reasons is a valid practice on review"); *see also Chen v. INS*, 87 F.3d 5, 8 (1st Cir. 1996) ("[W]e join eight of our sister circuits in ruling that the Board ... may simply state that it affirms the IJ's decision for the reasons set forth in that decision."). Although the streamlining procedures allow a board member to affirm the IJ's decision based on different reasons than those set forth by the IJ, the BIA is cognizant of this possibility and knows the risk it takes in declining to articulate a different or alternate basis for the decision. *See Albathani*, 318 F.3d at 378 ("[I]f the BIA does not independently state a correct ground for affirmance in a case in which the reasoning proffered by the IJ is faulty, the BIA risks reversal on appeal.")

■ Analyzing the due process claim under *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), as the Carriches urge us to do, does not yield a different result. Under the *Mathews* three-part test, we must consider: "[1] the private interest that will be affected by the

---

5. Amicus curiae's broader argument, namely that in numerous cases the Board members are not adhering to regulatory prerequisites, is not before us in this case. *Russian River*

*Watershed Prot. Comm. v. City of Santa Rosa*, 142 F.3d 1136, 1141 & n. 1 (9th Cir.1998) ("Generally, we will not consider on appeal an issue raised only by an amicus.").

official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews,* 424 U.S. at 335, 96 S.Ct. 893.

Although we have no doubt that the Carriches have a substantial interest in remaining in the United States, the other two factors favor the government. The Carriches have not demonstrated either that there is a substantial risk of erroneous deprivation or that additional safeguards are required for the streamlining procedure to pass constitutional muster. *Id.* at 335, 96 S.Ct. 893. As discussed above, the alleged risks of erroneous deprivation are mitigated through the regulatory structure itself. Petitioners receive a reasoned decision from the IJ and have the option to seek reconsideration from the BIA. *See* 8 U.S.C. § 1229a(c)(5). And, in cases where the courts of appeal have jurisdiction, petitioners are also entitled to an additional level of review.

As to the final *Mathews* factor, the Carriches have not demonstrated that the Government's interest in reducing the financial and administrative burdens imposed by the BIA's caseload is insubstantial or that streamlining does not further this goal. In fact, the streamlining regulations have proven effective at reducing the BIA's backlog and the cost of administrative appeals. *See* Board of Immigration Appeals: Procedural Reforms to Improve Case Management, 67 Fed.Reg. 54,878, 54,879 (Aug. 26, 2002) (to be codified at 8 C.F.R. pt. 3) (concluding that streamlining has proven effective at reducing backlog and reporting that over 58% of new cases in 2001 were streamlined); *id.* at 54,899–

54,900 (stating that the BIA's dispositions per month have increased from 1,800 dispositions per month in 2000 to over 5,200 dispositions per month by mid–2002).

Accordingly, we conclude that the BIA did not violate the Carriches' due process rights by streamlining their appeal.

### III. CHALLENGE TO APPLICABILITY OF STREAMLINING REGULATIONS

In a variation on their due process challenge, the Carriches also posit that streamlining is never appropriate in cancellation of removal cases because of the discretionary nature of the decision. In particular, the Carriches assert that whether "exceptional and extremely unusual hardship" exists is such a fact-oriented inquiry that every cancellation of removal case is necessarily novel, and thus summary adjudication, even if correct, is arbitrary and a denial of due process. The Carriches also contend that the fact-oriented, discretionary nature of the inquiry makes cancellation of removal cases inappropriate for streamlining under the criteria set forth in the regulation. *See* 8 C.F.R. § 3.1(a)(7)(ii)(A) (providing that a case may only be streamlined if it "does not involve the application of precedent to a novel fact situation").

The Carriches' due process challenge fails. We recognize that cases, by their very nature, are not manifestations of abstract legal principles. Still, not every case is novel in the eyes of the law. As the Department of Justice noted in comments on the proposed regulations, "while the facts of each case are different, the legally significant facts often fall into recognizable patterns, and that where this occurs, a novel fact situation may not be presented." 64 Fed.Reg. 56,140. In the universe of removal cases, not every case presents a factual situation that requires the BIA to establish and reassess the

boundaries of the "exceptional and extremely unusual hardship" standard. It is neither arbitrary nor a violation of due process for the BIA to decide that a particular case clearly falls within, or outside, those boundaries.

We now turn to the Carriches' regulatory challenge. They maintain that, under the third prong of the regulation, every appeal involves a "novel fact situation," which is a non-discretionary factor that is reviewable. Before we address the Carriches' argument that the regulations do not permit streamlining for cancellation of removal cases because of their novel factual nature, we must determine whether we have jurisdiction to consider the decision to streamline the Carriches' case. *See Cedano–Viera v. Ashcroft*, 324 F.3d 1062, 1064 (9th Cir.2003). Relying on *Heckler v. Chaney* and its progeny, the government argues that we lack jurisdiction because the decision to streamline is "committed to agency discretion by law" and therefore unreviewable under the Administrative Procedures Act ("APA"). *See Heckler v. Chaney*, 470 U.S. 821, 823, 832–33, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985); 5 U.S.C. § 701(a)(2) (the "APA").

Although we agree with the government's ultimate conclusion, we do not embrace the government's argument that the streamlining decision is inherently discretionary. Indeed, portions of the streamlining decision are non-discretionary determinations that we would ordinarily have jurisdiction to review. Our analysis stems not from the APA but instead from the statute that specifically addresses our jurisdiction to review removal proceedings, namely the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). *See* 8 U.S.C. §§ 1252(a)(1); 1252(b). IIRIRA "dramatically altered

this court's jurisdiction" to review the merits of final decisions by the IJ or BIA. *Romero–Torres*, 327 F.3d at 889–90 (quoting *Kalaw v. INS*, 133 F.3d 1147, 1149 (9th Cir.1997)).

■ Specifically, IIRIRA eliminated our jurisdiction to review "discretionary decisions involved in the cancellation of removal context, including the ultimate discretionary decision to deny relief." *Romero–Torres*, 327 F.3d at 890. We may, for example, review whether an alien has met the "ten years of continuous physical presence" requirement because this is an objective, factual inquiry. *See Kalaw*, 133 F.3d at 1150–51. Likewise, we have jurisdiction to review a non-discretionary question such as whether an adult daughter qualifies as a "child" under the statute. *See Montero–Martinez v. Ashcroft*, 277 F.3d 1137, 1144 (9th Cir.2002). But we may not review whether an alien has demonstrated "exceptional and extremely unusual hardship" because this inquiry is discretionary in nature. *See Romero–Torres*, 327 F.3d at 892.

In situations where we have appellate jurisdiction, IIRIRA requires the consolidation, in a single petition for review from a final order, "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). The Supreme Court interpreted less sweeping language in the predecessor to IIRIRA as enabling an alien to bring a challenge to "all matters on which the validity of the final order is contingent." *INS v. Chadha*, 462 U.S. 919, 938, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (internal citation omitted).[6] Because the decision to

---

**6.** The provision interpreted in *Chadha* stated that a petition for review in the Court of

Appeals "shall be the sole and exclusive procedure for the judicial review of all final or-

streamline bestows the IJ's decision with the status of the final agency decision, any review of the streamlining decision in the Carriches' case would be encompassed within review of the final decision denying cancellation of removal. *See* 8 C.F.R. § 3.1(a)(7).

The nature of the streamlining procedures, however, makes our review impermissible here, and both impractical and unnecessary in other situations.[7] In deciding whether to streamline a case, the individual BIA member analyzes the merits of the IJ's decision to determine if the decision was correct, if the factual situation is novel, or if any errors were harmless. *See* 8 C.F.R. § 3.1(a)(7)(ii). Similarly, in order to determine whether these streamlining factors were properly applied, we, too, would be required to examine the merits of the IJ's decision; otherwise we could not

assess whether the decision was correct or whether it met other streamlining criteria.

The Carriches' position that the streamlining procedures should never be applied to cancellation of removal cases focuses exclusively on the "exceptional and extremely unusual hardship" requirement, a determination that we are without jurisdiction to review. Indeed, the Carriches rely on the discretionary nature of this requirement as the primary reason why each cancellation of removal case is unique and thus impossible to streamline. This circular logic does not save the day. To assess whether streamlining was appropriate, we would necessarily be engaged in a merits analysis of the hardship claim. Because we lack jurisdiction to review the merits of the IJ's discretionary decision regarding the "exceptional and extremely unusual hardship" requirement—the only aspect of the cancellation of removal decision at issue in the Carriches' case[8]—we are also

---

ders of deportation ... made against aliens within the United States pursuant to administrative proceedings under section 242(b) of this Act." *Chadha*, 462 U.S. at 937, 103 S.Ct. 2764 (quoting 8 U.S.C. § 1105a(a) (repealed 1996)).

7. We observe that in addressing the streamlining regulations, the other circuits do not specifically analyze the jurisdictional issue. With the exception of the Eleventh Circuit, the other circuits have considered streamlining regulations only in the context of asylum and withholding of deportation petitions for which judicial review is still permitted under IIRIRA. *See, e.g., Albathani*, 318 F.3d at 378; *Soadjede*, 324 F.3d at 833; *Georgis*, 328 F.3d at 967; *Mendoza*, 327 F.3d at 1289. In those cases, the streamlining and the merits issues collapse into one analysis and thus the issues surrounding jurisdiction over streamlining, however decided, would not prevent review on the merits. Apart from the Carriches' challenge, the only other court of appeals case related to streamlining and cancellation of removal is *Gonzalez–Oropeza v. U.S. Attorney General*, 321 F.3d 1331, 1333 (11th Cir. 2003). In *Gonzalez*, the Eleventh Circuit addressed streamlining but did so without any analysis or discussion of jurisdiction. *See id.*

The court ultimately concluded that the BIA did not err in streamlining the appeal. *See id.* at 1334.

8. The "concurring dissent" asserts that we retain jurisdiction here because the Carriches do not directly challenge the merits of the IJ's decision but rather assert that their appeal was inappropriate for streamlining because it raises "novel" questions that are not "squarely controlled" by BIA precedent. Framing the question in this manner does not avoid the jurisdictional bar because this approach, like a direct challenge on the merits, requires a merits analysis. Calling it something else does not change the legal character of the challenge. In order to determine whether the streamlining regulations were properly applied in such a situation, we would need to look at BIA precedent regarding the existence of exceptional hardship and apply it to the facts of the petitioner's case. As we concluded in *Romero–Torres*, Congress has expressly precluded us from doing so. *See* 327 F.3d at 892. Whether a factual situation concerning exceptional hardship is "novel" or "squarely controlled by precedent" is a decision that Congress assigned exclusively to the BIA. *See id.* The fact that the appeal was streamlined

**1018**

without jurisdiction to evaluate whether streamlining was appropriate. *See Romero-Torres,* 327 F.3d at 892.[9]

The Carriches' situation stands in contrast to cases where we have jurisdiction to review the merits, such as an asylum case or a cancellation of removal case in which the IJ's decision is not based on a discretionary factor. In those cases we would, as a technical matter, have jurisdiction to review the BIA's streamlining decision because the streamlining would fall within "any action taken" in a removal proceeding. *See* 8 U.S.C. 1252(b)(9).

However, such review would be unnecessary and duplicative. Any concern that the petitioner does not know the "real" reasons for the BIA's decision falls by the wayside when we review the merits of the case.[10] If the BIA streamlines a case, the IJ's decision becomes the final agency decision, and the regulatory scheme gives us a green light to scrutinize the IJ's decision

as we would a decision by the BIA itself. The decision to streamline becomes indistinguishable from the merits. Were we to find an error, we would either grant relief if permitted or simply remand to the BIA to proceed in a manner consistent with our decision. Under these circumstances, it is the BIA, not the alien petitioner, that is saddled with any errors the IJ makes and with the risk of reversal on grounds that do not reflect the BIA's actual reasons. *See Albathani,* 318 F.3d at 378 ("[I]f the BIA does not independently state a correct ground for affirmance in a case in which the reasoning proffered by the IJ is faulty, the BIA risks reversal on appeal.")

Thus, where we can reach the merits of the decision by the IJ or the BIA, an additional review of the streamlining decision itself would be superfluous. *See Georgis v. Ashcroft,* 328 F.3d at 967 ("For our purposes here (and in many cases it seems), it makes no practical difference whether the BIA properly or improperly

does not restore jurisdiction that was removed by statute. *See Bhd. of Locomotive Eng'rs,* 482 U.S. at 278, 107 S.Ct. 2360 (rejecting the proposition "that if the agency gives a 'reviewable' reason for otherwise unreviewable action, the action becomes reviewable.")

**9.** The Carriches rely upon cases suggesting that the BIA must explain how it balanced the particular facts of each case in reaching its hardship determination. *See, e.g., Velarde v. INS,* 140 F.3d 1305, 1310–11 (9th Cir.1998); *Gutierrez–Centeno v. INS,* 99 F.3d 1529, 1532–33 (9th Cir.1996); *Santana Figueroa v. INS,* 644 F.2d 1354, 1357 (9th Cir.1981). But these cases, which were decided before IIRIRA removed our jurisdiction to review discretionary determinations of the BIA, are not persuasive here. *See Romero–Torres,* 327 F.3d at 889.

**10.** Given that we have jurisdiction to review non-discretionary decisions by the IJ but lack jurisdiction to review discretionary decisions in the context of cancellation proceedings, a potentially anomalous situation could arise

where both discretionary and non-discretionary issues are presented to the BIA and the BIA's streamlining procedure prevents us from discerning the reasons for the BIA's decision. For example, assume that the IJ denies a petition for cancellation of removal on the ground that the petitioner failed to establish hardship. The BIA designates the case for streamlining and a single member affirms the IJ. Although no reason is required, the BIA in fact internally reasons that the petitioner failed to meet the ten-year physical presence requirement, a legal determination that is subject to judicial review. Because no reasoned BIA decision is given, the IJ'S decision is controlling and no judicial review is available because the ultimate hardship decision is discretionary. In another troubling scenario, if the petitioner presents new and legitimate arguments to the BIA but is simply met with an "Affirmed without Opinion" decision, the petitioner may also be faced with a jurisdictional default in the court of appeals. We do not address such situations here, however, because only the discretionary "exceptional and extremely unusual hardship" factor was in dispute before the BIA.

streamlined review of [the alien's] case."); *Cf. Garcia v. Attorney General,* 329 F.3d 1217, 1223 (11th Cir.2003) (reviewing streamlining in the context of a due process claim). Indeed, judicial review of the streamlining decision would be akin to the "strange, one-step-removed" basis of review that the Supreme Court held would serve no purpose in *ICC v. Locomotive Engineers,* 482 U.S. 270, 279, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987).

The juxtaposition between the Carriches' case and those cases where we do have jurisdiction to review the merits reinforces our analysis here. Accordingly, we conclude that we are without jurisdiction to review whether the BIA improperly streamlined an appeal in which only discretionary factors are in dispute. The Carriches' petition on the regulatory aspect of their appeal is dismissed for lack of jurisdiction. For the reasons set out above, the remainder of the petition is denied.

**The petition is denied in part and dismissed in part.**

T.G. NELSON, Circuit Judge, concurring in part and dissenting in part:

With respect and with the recognition that "[i]t is bad for the mind to continually be part of unanimity," [1] I must part ways with the majority's analysis. I disagree with the majority's conclusion that we lack jurisdiction to review the BIA's decision to streamline a case. With one exception, the plain language of the streamlining criteria demonstrates that the criteria are *non-discretionary.* Thus, under clear precedent, we retain jurisdiction to review the streamlining decision. Not surprisingly, no other circuit has concluded that it lacks jurisdiction to review the decision to streamline.

Because I conclude that the BIA appropriately streamlined this case, I too would deny the petition. Thus, I concur in the end result the majority reaches. The critical difference between my analysis and that of the majority is that I would deny the entire petition on the merits rather than deny it in part and dismiss it in part for lack of jurisdiction.

I agree with the conclusion that the streamlining procedures do not violate due process. In the interest of brevity and to focus my discussion on the major difference between my reasoning and that of the majority's, I will not dwell on the problems with the majority's analysis of the risks posed by the streamlining regulations.[2] I

---

1. Christopher Morley, American novelist, journalist, and poet (1890–1957).

2. The majority declares that the "risks of erroneous deprivation are mitigated through the regulatory structure itself." However, the majority chooses not to address the risks presented by the interplay between the streamlining regulations and the jurisdiction-stripping rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), does not authorize us to ignore those risks. *Id.* at 335, 96 S.Ct. 893. Thus, I would address these risks directly. However, in so doing, I would conclude that other factors mitigate and outweigh them.

The most serious risk of erroneous removal of an alien arises from the fact that the procedures conceal the basis for the BIA's decision. 8 C.F.R. § 3.1(a)(7)(iii) (1999). We can never know whether the BIA's decision was based on a discretionary judgment or a non-discretionary one. As a result of this anomaly, the procedures permit a situation in which no basis for affirming would exist, yet the IJ's decision would be affirmed. For example, assume an IJ denies relief on two grounds: a non-discretionary ground (ground A) and a discretionary ground (ground B). The BIA streamlines, secretly reasoning that, although ground B—the discretionary ground—was error, the error was harmless because ground A was correct. When the case reaches this court, we do not know that the BIA rejected ground B. We do know, however, that we

turn now to the heart of my disagreement with the majority.

## I. WE HAVE JURISDICTION TO REVIEW THE DECISION TO STREAMLINE BECAUSE THE STREAMLINING CRITERIA ARE NON-DISCRETIONARY

The majority acknowledges the streamlining criteria but then subsequently ignores them in its analysis. However, "[f]acts do not cease to exist because they are ignored."[3] A member of the BIA may streamline a case if the IJ's decision was correct, any errors were harmless, and *either* precedent controls the issue and the issue does not involve a novel factual situation *or* the issues are insubstantial.[4] Significantly, the streamlining regulation does not authorize the BIA member to streamline as a matter of discretion if the case does not meet these criteria. Rather, like the statutory prerequisites for cancellation of removal relief,[5] the streamlining criteria are mandatory, qualifying criteria. A case must meet those criteria before a BIA member may streamline. If the criteria are not met, a three-member panel *must* decide the case.[6]

In determining whether we have jurisdiction, the critical question is whether the criteria are discretionary or non-discretionary.[7] The majority mistakenly con-

---

cannot review ground B. Further assume that we review ground A and conclude that it was error. Thus, no basis for affirming the IJ's decision would exist because the BIA rejected ground B and we rejected ground A. At this juncture, we would have two choices: (1) we could presume that the BIA had *not* rejected ground B and affirm (erroneously removing the alien) because we ourselves could not review that ground, or (2) we could conclude that the case required remand.

I would conclude that this risk is mitigated because we must choose the second option: we must remand to the BIA and allow it to adopt or reject the IJ's original discretionary decision, as only it has the power to do. Because of the peculiar design of the streamlining regulations, we can no longer tell when an error is harmless. Thus, our harmless error analysis is the first of two primary factors that mitigate the risk introduced by the streamlining regulations. The second factor is the BIA's own practices that allow it an opportunity to correct its errors. *See* Executive Office for Immigration Review; Board of Immigration Appeals: Streamlining, 64 Fed. Reg. 56,135, 56,136 (Oct. 18, 1999) (to be codified at 8 C.F.R. pt. 3) (allowing motions to reconsider on traditional grounds, but not only on the ground that the case was improperly streamlined); *In re Ramos*, 23 I. & N. Dec. 336 (BIA 2002) (reconsidering a streamlined case, determining that precedent did not control, and publishing a decision overruling earlier decisions). Because of these two factors, what would have been a serious risk now

carries substantially less weight in the *Mathews* analysis.

**3.** ALDOUS HUXLEY, *Note on Dogma, in* PROPER STUDIES 205 (1927).

**4.** 8 C.F.R. § 3.1(a)(7)(ii).

**5.** 8 U.S.C. § 1229b(b)(1)(A)-(D) (listing the four statutory prerequisites that an alien must show to establish eligibility for discretionary cancellation of removal relief).

**6.** 8 C.F.R. § 3.1(a)(7)(iv). The three-member panel may also decide to streamline the case but only pursuant to the same criteria. *Id.*

**7.** IIRIRA altered substantially the jurisdictional landscape for immigration appeals to this court. *See Zazueta–Carrillo v. Ashcroft*, 322 F.3d 1166, 1169 (9th Cir.2003). It divided the world of immigration claims between claims asserting error in discretionary decisions and claims asserting error in non-discretionary decisions. IIRIRA only divests us of jurisdiction over the former category, not the latter. *See* 8 U.S.C. § 1252(a)(2)(B)(i); *see also Barahona–Gomez v. Reno*, 236 F.3d 1115, 1119 (9th Cir.2001) (stating that IIRIRA "limits judicial review of decisions committed to the unfettered discretion of the INS"). *Cf. Reno v. Am.-Arab Anti–Discrimination Comm.*, 525 U.S. 471, 486, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (stating that the "theme" of IIRIRA is protection of the executive's exercise of discretion from judicial review).

cludes that it would have to reassess the merits of the discretionary hardship decision if it were to find jurisdiction and to reach the merits of this case.[8] The majority asks the wrong question and ignores the actual claim the Carriches assert. In so doing, the majority fails to apply bedrock principles of statutory construction that we apply in analyzing immigration statutes. In particular, it ignores the principle that we must "construe narrowly [immigration statutes'] restrictions on jurisdiction."[9]

A BIA member may streamline a case if (1) the result the IJ reached was correct; (2) any errors were "harmless or non-material"; and (3) *either* precedent controls the issue and the issue involves no novel factual situation, *or* the issue is so insubstantial that full review is not warranted.[10] As a general rule, the mandatory criteria are non-discretionary. For example, when a single BIA member evaluates the second criterion and determines that an error is harmless, the evaluation involves no discretion: the BIA member merely applies the law to the facts.[11] The third criterion is similarly non-discretionary. For example, determining whether precedent controls and the issue involves no novel factual situations is not an exercise of discretion. As we explained in *Kalaw v. INS*,[12] we retain jurisdiction to consider issues that require "application of law to factual determinations."[13] With one exception, review of the streamlining criteria requires nothing more than the application of law to facts. Thus, as a general matter, the streamlining criteria are non-discretionary, and we retain jurisdiction.

One fact-specific exception exists. The first criterion requires the BIA member to evaluate whether the result was correct. The BIA's evaluation of this factor may, but will not always, be a discretionary decision. The decision will be discretionary under the following facts. Assume that an IJ concluded that an alien met the statutory prerequisites for cancellation of removal but denied relief as a matter of discretion. Further assume that the alien believes that the IJ's discretionary determination was error and therefore appeals the BIA's decision to streamline. Before us, the alien would assert that his case did not meet the first streamlining criterion because the result was incorrect.[14] In such a situation, evaluation of the case necessarily requires the BIA member to determine whether the IJ correctly denied cancellation of removal. We would lack jurisdiction because the only basis the alien raises on which we could reverse the streamlining decision would require us to second-guess a discretionary decision.

**8.** Cf. *Zazueta–Carrillo*, 322 F.3d at 1169 ("IIRIRA eliminates judicial review of certain enumerated decisions entrusted to executive discretion; it does not eliminate judicial review of all decisions bearing any relationship to" discretionary forms of relief).

**9.** *Montero–Martinez v. Ashcroft*, 277 F.3d 1137, 1141 (9th Cir.2002); *see also INS v. St. Cyr*, 533 U.S. 289, 298, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

**10.** 8 C.F.R. § 3.1(a)(7)(ii).

**11.** *Zazueta–Carrillo*, 322 F.3d at 1169 (holding that a BIA decision was non-discretionary because it is "an application of law," and thus we have jurisdiction); *Barahona–Gomez*, 236 F.3d at 1120 ("Formal procedural rules also govern the BIA's actions. These are quasi-judicial functions, not discretionary acts.") (internal citation omitted).

**12.** 133 F.3d 1147 (9th Cir.1997).

**13.** *Id.* at 1150. Whether the case satisfies the mandatory streamlining criteria is not "subjective" either. *See id.* at 1151.

**14.** Of course, this necessarily implies that the alien would also contend that the IJ's discretionary error was not harmless.

That we cannot do. Thus, we would lack jurisdiction over the streamlining decision if the alien asserts that the result was incorrect because the alien disagrees with the IJ's exercise of discretion.

The evaluation of the first criterion will not always be discretionary, however. If the alien asserts that the result was incorrect because the IJ's non-discretionary determination was error, then the BIA's evaluation of that criterion is similarly non-discretionary. For example, if an IJ denied relief because of an erroneous conclusion that the alien had not established the requisite time in this country to qualify for relief,[15] an evaluation of whether the result was correct would not require this court to second-guess a discretionary determination. Thus, the first criterion may be discretionary in some cases. In such cases, we would lack jurisdiction, while in others, we would not.

The majority tries to shoehorn the Carriches' case into the narrow factual exception described above. However, as discussed above, the third criterion is non-discretionary—we can determine whether precedent controls by applying the law to the facts.

Contrary to the majority's assertion, we need not reach the merits of the hardship decision. We need only ask if the BIA's precedent covers the petitioners' situation.[16] If precedent controls, the case is over. If precedent does not control, the case does not meet the third criterion. Thus, we would remand to the BIA for a panel decision clarifying or expanding the hardship standard. The conclusion that BIA precedent does not control says absolutely nothing substantive about the hardship standard or whether the alien has established hardship. Rather, our conclusion would inform the BIA that its precedent does not cover the petitioners' situation and require the BIA to follow its own regulations in choosing whether or not to streamline a case.[17] The only relief we would offer is remand.[18] On remand, the BIA would be free to conclude that the petitioners showed insufficient hardship. Likewise, the BIA would be free to conclude that the petitioners satisfied the hardship standard.

. In addition to the plain language of the streamlining regulation, decisions of our sister circuits support the conclusion that

---

**15.** 8 U.S.C. § 1229b(b)(1).

**16.** The majority takes issue with my decision to frame the question in this manner. I find this quite surprising. I frame the question in this manner for two reasons. First, because the plain language of the streamlining regulations require it. 8 C.F.R. § 3.1(a)(7)(ii). Second, because the Carriches claim that their case did not meet this criterion. As I will demonstrate in the last section, determining whether precedent controls does not require reassessing the merits of the hardship determination. The majority's analysis distorts the third criteria such that it resembles the first: a question of whether or not the merits of the hardship analysis was correct. If the Department of Justice wanted to allow streamlining as long as the result was correct, it would have done so. It did not. I cannot agree with the majority's analysis because it ignores

the plain language of the streamlining criteria.

**17.** *Cf. Barahona–Gomez v. Reno*, 167 F.3d 1228, 1234 (9th Cir.1999) (noting that "the objective of plaintiffs in this case was not to obtain judicial review of the merits of their INS proceedings, but rather to enforce their constitutional rights to due process in the context of those proceedings") (internal quotation marks omitted).

**18.** *Cf. McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 495, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991) (noting that petitioners were not requesting a substantive declaration but, instead, "if allowed to prevail ... would only be entitled to have their case files reopened and their applications reconsidered in light of the newly prescribed INS procedures").

we have jurisdiction to review the decision to streamline. The majority cites to no other court that has concluded it lacks jurisdiction to review the decision to streamline because no such court exists.[19] In fact, the Seventh Circuit[20] and the Eleventh Circuit[21] have had no difficulty evaluating claims of improper streamlining.

I agree with the majority that sometimes the streamlining claim will fall by the wayside. When an IJ's decision contains an error that we can address, we need not reach the decision to streamline.[22] However, our choice of which error to reach would be a matter of discretion, not one of jurisdiction. We would choose between two equally dispositive claims that arise from the same final order.[23] Indeed, as suggested by the Seventh Circuit in *Georgis v. Ashcroft*,[24] in some situations, remanding to the BIA because it improperly streamlined may be preferable to reaching another error.[25]

## II. THE BIA MAY STREAMLINE CANCELLATION OF REMOVAL CASES AND IT PROPERLY STREAMLINED THIS CASE

Because I conclude that, with one fact-specific exception, we retain jurisdiction to review streamlining decisions, I would reach the merits of the Carriches' claim. The Carriches argue that cancellation of

19. It is ironic that the majority relies on *Romero–Torres v. Ashcroft*, 327 F.3d 887 (9th Cir.2003), to support its holding. The majority's reliance on *Romero–Torres* only underscores the analytical flaw in its analysis. *Romero–Torres* established that we lack jurisdiction to review whether an alien established "exceptional and extremely unusual hardship" because it is a discretionary decision. *Id.* at 892. As illustrated above, the streamlining criteria, with one fact-specific exception, are non-discretionary. Thus, the majority's analysis actually ignores the fundamental discretionary/non-discretionary distinction that *Romero–Torres* used to reach its holding.

20. *Ciorba v. Ashcroft*, 323 F.3d 539, 546 (7th Cir.2003) (evaluating the BIA's decision to streamline a case and concluding that streamlining was proper).

21. *See Garcia v. Att'y Gen.*, 329 F.3d 1217, 1222–23 (11th Cir.2003) (per curiam) (concluding that petitioner's constitutional claim that her case was improperly streamlined failed because her case met the BIA's streamlining criteria); *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1288–89 & n. 7 (11th Cir.2003) (rejecting petitioner's claim that BIA failed to comply with the streamlining regulations and concluding that a basis existed for both affirmance of the IJ's decision and for the BIA's decision to streamline); *Gonzalez–Oropeza v. U.S. Att'y Gen.*, 321 F.3d 1331, 1333–34 (11th Cir.2003) (per curiam) (evaluating alien's claim that the BIA violated due

process by improperly streamlining alien's case, concluding that case was properly streamlined, and thus concluding that court lacked jurisdiction because alien did not present a *substantial* constitutional claim).

22. *See Fajardo v. INS*, 300 F.3d 1018, 1019 n. 1, 1022 (9th Cir.2002) (remanding based on IJ's incorrect determination that a motion to reopen was not timely and declining to base decision on petitioner's claim that BIA improperly streamlined case). *Cf. Ciorba*, 323 F.3d at 546 (concluding that the claim that the case was improperly streamlined lacked merit because there was no underlying error in the IJ's asylum decision); *Flores–Leon v. INS*, 272 F.3d 433, 441 (7th Cir.2001) (declining to reach a claim that the BIA improperly summarily dismissed petitioner's appeal because the court "examined and rejected every claim that[petitioner] contends the BIA neglected").

23. *Cf. ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 282, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987) (concluding that an agency's decision not to grant a motion to reconsider was committed to agency discretion because there are no appropriate standards to apply, and the court can review the original order instead).

24. 328 F.3d 962 (7th Cir.2003).

25. *Id.* at 967 n. 4.

removal cases always involve novel fact patterns and that precedent can never control. I would reject the Carriches' claim on the merits and hold that the BIA properly streamlined the case.

Although cancellation of removal cases are fact-intensive, they do not always involve *legally* novel factual situations and are sometimes squarely controlled by precedent.[26] This is true even though "the BIA must consider the total cumulative effect on that petitioner of all the relevant factors." [27] Accordingly, I would conclude that the BIA may use its streamlining procedures for cancellation of removal cases. I would also conclude that it properly did so in this case. I depart from the majority's analysis because I believe the plain language of the streamlining criteria compels the conclusion that we have jurisdiction to review the BIA's decision to streamline a case.

---

**26.** *See* 8 C.F.R. § 3.1(a)(7)(ii)(A). For example, *In re Monreal–Aguinaga*, 23 I. & N. Dec. 56 (2001), controls this case. In that case, the BIA held that the petitioners failed to show exceptional and extremely unusual hardship under the following circumstances: the petitioner lived in this country for twenty years and was thirty-four years old; although his wife and infant child returned to Mexico because she was not eligible for cancellation of removal, petitioner had an eight-year-old and a twelve-year-old child, both United States citizens, who would be adversely affected by moving to Mexico; the petitioner was gainfully employed in the United States; and much of the petitioner's family, including his parents and many siblings, resided lawfully in the United States.

Although differences exist between this case and *Monreal–Aguinaga*, these differences weigh against the Carriches or are legally insignificant. *Monreal–Aguinaga* stated that a "lower standard of living or adverse country conditions in the country of return are factors to consider only insofar as they may affect a qualifying relative, *but generally will be insufficient in themselves to*" establish hardship. *Id.* § III, ¶ 2.

Contrary to the assertion of amicus, the record did not show that the Carriches would be unable to find employment in Mexico. Rather, it showed that finding work might be difficult. For example, Mr. Falcon Carriche previously worked in Mexico. Some of his brothers in Mexico had jobs. He testified that others had difficulty finding work, in part, because they were "lazy." Even under a more lenient hardship standard, we concluded that "[d]ifficulty in finding employment ... is ... mere [economic] detriment, relevant to a claim of hardship but not sufficient to require relief." *Santana–Figueroa v. INS*, 644 F.2d 1354, 1356 (9th Cir.1981). Thus, the facts in this case do not bring it outside the reach of *Monreal–Aguinaga*.

**27.** *Gutierrez–Centeno v. INS*, 99 F.3d 1529, 1535 (9th Cir.1996).