

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-28-2003

# Fatunmbi v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2887

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Fatunmbi v. Atty Gen USA" (2003). *2003 Decisions.* Paper 185.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/185

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2887

HAFEEZ O. FATUNMBI,
Petitioner

v.

ATTORNEY GENERAL U.S.A.

On Petition for Review of an Order of the
Board of Immigration Appeals
(BIA No. A27-112-273)

Argued July 31, 2003

Before:  SCIRICA, Chief Judge, RENDELL and AMBRO, Circuit Judges

(Filed October 28, 2003)

DAVID E. PIVER, ESQUIRE (ARGUED)
150 Strafford Avenue, Suite 115
Wayne, Pennsylvania 19087
        Attorney for Petitioner

JOHN D. WILLIAMS, ESQUIRE (ARGUED)
MICHAEL P. LINDEMANN, ESQUIRE
DOUGLAS E. GINSBURG, ESQUIRE
TERRI J. SCADRON, ESQUIRE
JOHN M. McADAMS, JR., ESQUIRE
United States Department of Justice
Office of Immigration Litigation

P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
   Attorneys for Respondent

―――――――――

OPINION OF THE COURT

―――――――――

SCIRICA, <u>Chief</u> <u>Judge</u>.

Petitioner Hafeez Fatunmbi, a native and citizen of Nigeria, came to the United

States in August 1981 on a student visa. Following his arrival he married, had three

children, all of whom are United States citizens, and earned a doctoral degree in

analytical chemistry. On March 24, 1997, the Immigration and Naturalization Service

charged him with being deportable under section 241(a)(1)(B) of the Immigration and

Nationality Act ("INA"), 8 U.S.C. § 1251(a)(1)(B), as someone who overstayed his visa.

His wife was charged as deportable under the same provision as someone who entered the

United States without inspection.

Fatunmbi and his wife applied for suspension of deportation under former INA §

244(a)(1), which provided for the Attorney General, in the exercise of discretion, to

suspend deportation if: (1) the individual has been physically present in the United States

for seven years; (2) the individual has been a person of good moral character during those

seven years; and (3) deportation would result in extreme hardship to a spouse or child

who is either a citizen or a lawful permanent resident. 8 U.S.C. § 1254(a)(1) (repealed).

Even if these factors were met the Attorney General could still exercise discretion to deny

2

suspension of deportation.  See So Chun Chung v. U.S. Immigration & Naturalization Serv., 602 F.2d 608, 611 (3d Cir. 1979).

On June 5, 1998, a Philadelphia Immigration Judge ("IJ") decided that Fatunmbi had satisfied the physical presence and extreme hardship requirements, but he denied relief anyway.[1]  The Board of Immigration Appeals ("BIA") affirmed the IJ's Oral Decision without opinion on June 10, 2002 pursuant to 8 C.F.R. § 3.1(a)(7).  Fatunmbi timely petitioned for review, and the government has argued that we do not have jurisdiction, contending that the IJ's Oral Decision is discretionary and unreviewable.

We will remand the record to the Board of Immigration Appeals, and ask the Board to remand the record to the Immigration Judge for clarification of the basis, or bases, of the Oral Decision.  The IJ's decision is the final agency action when a case is streamlined, 8 C.F.R. § 3.1(a)(7)(iii), and we are unable to conclusively determine our jurisdiction, or lack thereof, without knowing the exact basis of it.  "If the BIA streamlines a case ... the regulatory scheme gives us a green light to scrutinize the IJ's decision as we would a decision by the BIA itself."  See Falcon Carriche v. Ashcroft, 335 F.3d 1009, 1018 (9th Cir. 2003).[2]

---

[1]Mrs. Fatunmbi was found to have satisfied all three requirements and was granted suspension of deportation.  She is not a party to the petition for review.

[2]The issue of whether the "streamlining" procedure of 8 C.F.R. § 3.1(a)(7) violates due process and fails to conform with principles of administrative law is presently before an en banc panel of this Court in Dia v. Ashcroft, No. 02-2460 (3d Cir. reargued en banc May 28, 2003).  However, because Fatunmbi does not challenge the streamlining procedure, we need not address this issue in the present appeal.

3

The transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") apply here,[3] and they provide that "there shall be no appeal of any discretionary decision" under INA § 244.  See Section 309(c)(4)(E) of the Illegal Immigration Reform and Immigrant Responsibility Act.  However, several courts of appeals have either found, or indicated that they would find, jurisdiction if the alien was found to lack good moral character under one of the enumerated, or "per se," categories of INA § 101(f), 8 U.S.C. § 1101(f)(1)-(8).  See Bernal-Vallejo v. Immigration & Naturalization Serv., 195 F.3d 56, 61-62 (1st Cir. 1999); Kalaw v. Immigration & Naturalization Serv., 133 F.3d 1147, 1151 (9th Cir. 1997).  See also Ikenokwalu-White v. Immigration & Naturalization Serv., 316 F.3d 798, 803 (8th Cir. 2003); Omagah v. Ashcroft, 288 F.3d 254, 259 & n.7 (5th Cir. 2002).  We agree that determination of per se ineligibility under INA § 101(f)(1)-(8) is not a discretionary matter, and thus direct judicial review is available pursuant to 8 U.S.C. § 1105a(a) (repealed) under the transitional rules.  Id.

The government has argued that no per se category of INA § 101(f) is implicated here, but we are unpersuaded, without further clarification and an explanation, that we lack jurisdiction on this basis.  One of the enumerated categories, section 101(f)(6), provides that no person shall be found to be a person of good moral character who is or

---

[3]The BIA's decision was issued after October 31, 1996, but deportation proceedings were initiated prior to April 1, 1997.

4

was "one who has given false testimony for the purpose of obtaining any benefits under this chapter." 8 U.S.C. § 1101(f)(6). The IJ addressed section 101(f)(6) in the Oral Decision by specifically referring to this subparagraph, A.R. 114,[4] and by referring several times to its specific language concerning falsehoods for the purpose of obtaining immigration benefits, A.R. 112, 117. One of those references occurs immediately after the IJ stated his conclusion that Fatunmbi was not statutorily eligible for suspension of deportation because he lacked good moral character.[5]

On remand the Immigration Judge should clarify whether his decision that Fatunmbi was "not statutorily eligible for suspension of deportation because he cannot demonstrate that he is a person of good moral character," A.R. 116, was based on a

---

[4]The IJ stated: "The statute specifically delineates that which is not good moral character or that which obviates the finding of good moral character at section 101(f) of the Act in the definition **section number six** [which] states that, one who has given false testimony for the purpose of obtaining any benefits under this act cannot be found to be a person of good moral character." A.R. 114 (emphasis added).

[5]The IJ stated:

> [T]he Court finds that during the past seven years, of which the statute requires that a showing of good moral character be made, that there have been numerous attempts to present himself to the Immigration Service and **to lie and to misrepresent in order to obtain an Immigration benefit**, namely attempts to adjust his status. Such willful misrepresentation occurred as recently as February 1995 during an adjustment interview.... [T]here have been numerous attempts by the respondent since [1987 or 1990] **to misrepresent himself and his Immigration history in the United States in order to obtain benefits from the Immigration and Naturalization Service.**

A.R. 117 (emphasis added).

determination that Fatunmbi was per se ineligible for suspension of deportation under INA § 101(f)(6) as a person who had given false testimony in order to secure benefits under the immigration act. 8 U.S.C. § 1101(f)(6). If the decision was *not* based on a determination that Fatunmbi was per se ineligible under section 101(f)(6), but was instead based on the unnumbered paragraph that immediately follows section 101(f)(8),[6] the IJ should expressly say so, and explain why he did not ultimately base his decision on section 101(f)(6).[7]

The Immigration Judge also should clarify whether he stated a second, independent basis for his decision, that basis being that Fatunmbi was not entitled to suspension of deportation as a matter of discretion. The IJ stated: "Therefore, the Court

---

[6]The IJ also referred to this unnumbered, or "catch-all" paragraph, stating: "And at the bottom of the definitional section of good moral turpitude, the Act goes on to state that the fact that any person is not within any of the foregoing classes, should not preclude a finding that for other reasons, such person is or was not of good moral character." A.R. 114 (internal quotations omitted).

[7]We note that the language of (f)(6) is fairly precise, requiring findings of: (1) "false" (2) "testimony" (3) given "for the purpose of obtaining benefits" under the chapter. 8 U.S.C. § 1101(f)(6). Given the Supreme Court's refusal to read a materiality requirement into this part of the statute, see United States v. Kungys, 485 U.S. 759, 779-80 (1988), we think its specific terms should be adhered to, and each finding should be reasoned specifically by the IJ. And, if the ruling was based on the "catchall" provision with a broader view of "good moral character," we assume the IJ would take into account other evidence of character – there seems to have been ample evidence of good character not related to Fatunmbi's immigration proceedings that should be considered – and that the IJ's opinion would discuss such evidence as well. Here, the IJ failed to allude to consideration of other aspects of Fatunmbi's life or professional career. On remand, if the "catchall" provision is relied upon, we would expect such consideration to be evident from the opinion.

6

cannot find that the respondent either can show good moral character or even if, arguably, he could show good moral character, *that he would be deserving of a discretionary grant of relief in this case*." A.R. 117 (emphasis added). Although the italicized language in the quoted sentence is clear enough, we are unwilling at this time to conclude that we lack jurisdiction over the petition for review because of it. Kalaw, 133 F.3d at 1152 ("[I]f the Attorney General decides that an alien's application for suspension of deportation should not be granted as a matter of discretion in addition to any other grounds asserted, the BIA's denial of the alien's application would be unreviewable under the transitional rules."). The statement is not followed by an explanation or any analysis. In addition to the apparent failure to consider Fatunmbi's intellectual and social contributions, it strikes us as inconsistent that the IJ would place so much weight on Fatunmbi's obvious importance to his children in the context of the extreme hardship analysis,[8] but place none

_____

[8]The IJ stated:

> These are young children, they are U.S. citizens, and to deprive them of their parents would be hardship of the most extreme nature, especially in a society where ... all social scientists of every political persuasion are continually insisting that the break-up of the family is the greatest challenge to American society. If the parents were to be deported, the children would be certainly without any support or be forced to enter into some kind of foster home relationship, which would be devastating to their psychological development as well to them economically. As well if they were to be forced to be returned to Nigeria ... the average per capita income in Nigeria is approximately $280 a year [whereas the Fatunmbis earn] $40,000 or more to maintain their family in the United States.

A.R. 115-16.

7

on this factor in support of a favorable exercise of discretion, leading us to question whether there was a second, independent basis for the IJ's decision.

We will remand the record to the Board of Immigration Appeals for a remand to the Immigration Judge for clarification of the Oral Decision. We will retain jurisdiction and defer decision on the petition for review.

---

TO THE CLERK:

Please file the foregoing opinion.

/s/ Anthony J. Scirica
Chief Judge